

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-89,970-01

### EX PARTE COBY RAY HUDGINS, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 43,645-B-H-1 IN THE 124TH DISTRICT COURT
### FROM GREGG COUNTY

**RICHARDSON, J., filed a concurring opinion in which HERVEY, J., joined.**

## CONCURRING OPINION

Today, the Court grants Applicant a new punishment hearing based on grounds initially raised on direct appeal. Although this claim was addressed under direct appeal, Applicant was not yet formally diagnosed with post-traumatic-stress disorder ("PTSD") stemming in part from being sexually assaulted as a young child. Because he now brings expert evidence showing a PTSD diagnosis and that he was suffering PTSD *at the time of the offense*, I join the majority and concur in granting him a new punishment hearing.

**Background**

On October 5, 2013, Coby Ray Hudgins, Applicant, was drinking with Kayla Williams (his girlfriend's best friend), his cousin, and his girlfriend's sister. Hudgins told Williams about a pistol he had purchased, and Williams asked to see it. Applicant retrieved the pistol from the bedroom. Shortly thereafter, Applicant shot Williams in the forehead, killing her, and then fired three additional times in the direction of the other women as they fled. Shortly thereafter, he drove his car into the railing of a bridge and was arrested for DWI with a blood-alcohol content of 0.284.

Applicant's testimony was the only testimony presented during the defense's case-in-chief. Applicant testified he did not intend to fire the weapon and did not understand the safety mechanisms of the weapon. He testified he did not remember firing at the other women. During the guilt-innocence phase of trial, the jury had to choose between whether the killing was intentional (murder) or a reckless homicide (manslaughter). The jury found Hudgins guilty of murder.

During the guilt-innocence phase, the jury did not hear anything regarding the sexual assault Hudgins endured as a child. Per the trial judge's ruling, that evidence was relevant only at the punishment phase of the trial.

During the punishment phase of his trial, Coby Hudgins did not testify.[1] His great-uncle, Ricky Hudgins, testified but did not mention sexual abuse. His father, Michael

---

[1] Applicant testified during the guilt-innocence phase. While on *voir dire* and outside the presence of the jury, Applicant testified:

Q. Why did you go buy a gun?

2

Hudgins, testified that Coby was sexually assaulted by his cousin, Dustin Lay, when he was eight or nine-years old.[2] He went to on to explain that Lay was prosecuted and convicted of sexual assault against Coby, and that Coby had great fear of Lay being released from prison due to threats made by Lay. Lay was released from prison approximately 10 months prior to the instant offense. The sole testimony from Michael Hudgins regarding the effect of sexual abuse on his son was as follows:

A. Because I was sexually assaulted when I was a child.
Q. All right. What's that got to do with it?
A. I testified in court against the man who sexually assaulted me when I was a child, and I was threatened. Said when he got out he was going to come and pay me a visit and kill me.
Q. And this guy is who?
A. Dustin Rhan Lay.
Q. And is he kin to you?
A. Yes, sir. He is my -- he's my cousin.
Q. And do you remember what year you were molested? How old were you?
A. I was 11.
…
Q. Did you eventually testify in court against him?
A. Yes, sir.
…
Q. Somebody notified your mother that he was getting out of the pen --
A. Yes, sir.
Q. -- out of jail? And you remembered what he had told you?
A. Yes, sir.
Q. And it wasn't no doubt in your mind he was going to come after you?
A. No doubt in my mind whatsoever.
Q. In fact, the first -- I believe the first time we even came to court on this for a status docket or something, he was actually in the courtroom --
A. He was sitting right in this courtroom.
Q. -- in jail?
A. Yes, sir.
Q. And you didn't want to come in here?
A. No, sir.

[2] Applicant and his father differed on how old Applicant was when Lay sexually assaulted Applicant. Eleven compared to eight or nine-years old. Either way, Applicant was still a young child. Regardless of the actual date of the sexual assault that led to Applicant testifying against Lay, there is evidence of multiple sexual assaults suffered by Applicant. Dr. French's report explains Applicant was sexually assaulted by his cousin multiple times over several years.

> Q. And I mean, for people who have never been sexually assaulted as a kid, we don't know what you go through, do we?
>
> A. No, sir.
>
> Q. But it's -- it's got to be bad?
>
> A. I would imagine.

Applicant's third and last witness was his maternal grandmother, Betty Jean Tucker. The sole testimony from Tucker regarding the effect of sexual abuse on her grandson was as follows:

> Q. Did you know when he was sexually assaulted?
>
> A. Yes, I did.
>
> Q. That whole family went through that together, did they not?
>
> A. Yes, we did. It was very hard.

No expert testimony was sought to determine if Hudgins suffered any effects from the sexual abuse, or other life events, and how that could potentially lessen his moral culpability during the evening in question. The jury sentenced Hudgins to ninety-nine years imprisonment.

**Motion for New Trial**

Applicant filed a motion for new trial claiming his trial attorney rendered ineffective assistance of counsel for failing to investigate and request a forensic psychologist/psychiatrist to testify regarding his history as a sex-abuse victim for mitigations purposes at the punishment phase of trial. Dr. Wade French testified on behalf

of Hudgins. French testified generally about the effects PTSD can have on an individual. French did not examine Applicant directly and only spoke generally about the later psychological effects of trauma. The trial court denied the motion for new trial.

The court of appeals reversed the case on punishment in an opinion that concluded "[t]he mitigating evidence potentially available to Appellant which was not adequately explored, taken as a whole, might have had an influence on the jury's assessment of Appellant's moral culpability."[3] The appellate court found ineffective assistance of counsel based on the trial record. Further, it found the trial court had abused its discretion in deciding that a more favorable punishment was not reasonably probable. The lower court remanded the case for a new punishment hearing.

On discretionary review, however, this Court reversed the court below and affirmed the trial court's denial of new trial. Because there was no expert testimony specifying how Applicant's sexual assault experience actually affected Applicant, nor an actual diagnosis of PTSD, this Court found Applicant unable to show that he was actually prejudiced under *Strickland*. "Especially in the absence of some testimony that Appellant personally suffered from the deleterious effects of PTSD, Appellant's new mitigating evidence was of marginal value at best."[4]

But in a concurring opinion Judge Hervey noted:

---

[3] *Hudgins v. State*, No. 12-15-00153-CR, 2017 WL 361204, at *13 (Tex. App.—Tyler Jan. 25,2017) (not designated for publication).

[4] *Hudgins v. State*, No. PD-0163-17, 2018 WL 525716, at *5 (Tex. Crim. App. Jan. 24, 2018) (not designated for publication).

5

Here, the mitigating evidence presented at the new-trial hearing is greater and more qualitative than what was presented by trial counsel. French's testimony provided a critical link that was not explored at trial: was Hudgins less morally blameworthy for committing the crime than the jury believed because he suffered from PTSD, which affected his behavior the night of the shooting? While I recognize that the posture of this case is that of reviewing a trial court's decision to deny a new trial, which is a difficult hurdle to surmount, if squarely presented with the issue, I believe there is a reasonable probability that the jury would have assessed a lesser sentence had this mitigating evidence been discovered and presented at trial.[5]

Judge Hervey further noted in an attached footnote:

In light of the majority's disposition of this case, if Hudgins wants to continue to seek relief, he must file a post-conviction application for a writ of habeas corpus. Through that procedural process Hudgins can develop a writ record without the time constraints associated with a new-trial motion. He also has a higher chance of success because the issue will be only whether his attorney was ineffective, not whether the trial court abused its discretion when it denied a motion for new trial claiming ineffective assistance of counsel.[6]

This is exactly what Applicant did, in this application for a writ of habeas corpus.

**Applicant's Writ of Habeas Corpus**

Applicant now comes before this Court and submits a "Mental Status and Personality Assessment" conducted by Dr. French which indicates he actually suffers from PTSD. This is a result of witnessing family violence at an early age and the years of forceful sexual assaults from his cousin, Lay. "Specific symptoms he recalled included isolating himself from others, having startled responses to noises, pulling skin off of his toes, biting his fingernails to the quick, fearing that he was being watched by others and

---

[5] *Id* at *8. (Hervey, J., concurring).

[6] *Id*. at *8 n.11. (Hervey, J., concurring).

episodes of depression." In terms of actual effects on Applicant per Dr. French's report, PTSD can cause arousal symptoms. "The arousal symptoms most often seen include irritability, aggression, recklessness, insomnia, hypervigilance and exaggerated startle responses." The report further explains that a person suffering from PTSD can spend a considerable amount of time trying to avoid troubling memories. This can sometimes to experiencing dissociative symptoms where those suffering PTSD can come to believe they are actually reliving the traumatic event.

The State argues that, despite this new evidence, Applicant's claims are procedurally barred on habeas writ because they were already addressed on direct appeal. However, Applicant has raised new and relevant material evidence to show that he "personally suffer[s] the deleterious effects of PTSD."[7] Compared to the speculative evidence of PTSD at trial, the report provides a more "concrete basis" for the jury to deliberate on because it allows Dr. French to actually opine on "Appellant's potential for recidivism."[8] Thus, Applicant's claims should not be barred from being re-urged on a writ of habeas corpus.[9]

---

[7] *Id*. at *3.

[8] *Id*.

[9] *Ex parte Nailor*, 149 S.W.3d 125, 131 (Tex. Crim. App. 2004) ("Claims raised and rejected on direct appeal are generally not cognizable on habeas corpus. However, in *Ex parte Torres*, we stated: 'this doctrine should not be applied where [1] direct appeal cannot be expected to provide an adequate record to evaluate the claim in question, and [2] the claim might be substantiated through additional evidence gathering in a habeas corpus proceeding.'").

It is apparent that Applicant's trial counsel should have presented expert testimony during the punishment phase. Expert testimony regarding Applicant's traumatic history as a child sexual assault victim combined with the physical and mental effects of that trauma could have mitigated the 99-year sentence Applicant received. Thus, Applicant was prejudiced and should be granted a new punishment hearing.

For these reasons, I respectfully join the majority and concur.

Filed: June 19, 2024

Do not publish